· CALEB H. JACKSON v. CHARLES R. JOHNSON.

After a defendant in attachment has entered appearance under section 38 of the Attachment act without giving bond, the auditor appointed has no power to proceed under section 46 for the discovery of other property of the defendant.

Motion to attach for contempt, &c.

Argued at February Term, 1889, before Justices MAGIE and GARRISON.

For the motion, *Charles L. Carrick.*

*Contra, Edward S. Savage.*

The opinion of the court was delivered by

MAGIE, J.   In a suit commenced by attachment the plaintiff moves to attach the defendant for contempt, in refusing to be examined under oath by the auditor when brought before him by warrant, under the provisions of section 46 of the Attachment act. *Rev., p.* 50.

Correct practice would probably require a motion for a rule to show cause. *In re Cheeseman,* 20 *Vroom* 115.   But no ·objection to the practice adopted has been made, and the matter has been fully argued.   We are warranted therefore in disposing of the motion on its merits, as if a rule to show cause had been allowed and the facts now admitted appeared on its return.

The facts appearing are: That the attachment was duly issued against defendant, who duly entered appearance to the action without giving bond, pursuant to the privilege conferred on a defendant in attachment by section 38 (*Rev., p.* 48); that an auditor was appointed, who afterward duly issued his warrant under section 46 (*Rev., p.* 50), whereby defendant was brought before him and required to submit to examination, under oath, respecting his property, &c., and that defendant refused to be sworn.

By the provisions of section 46, one who refuses to be thus sworn, when duly required, is guilty of a contempt of the court which appointed the auditor.

Defendant's refusal was on the advice of counsel, who now claim it to be justified on two grounds.

It is first insisted that the provisions of section 46 are not applicable to a defendant in attachment, because (1) the act assumes him to be absent or absconding, and so cannot have been intended to authorize his examination, or because (2) express power to examine the wife of the defendant is given, and this implies the exclusion of the defendant himself.

The language of the section authorizes an auditor to issue a warrant and bring before him the wife of the defendant or "any other person," and examine them, under oath, touching defendant's property. The language is broad enough to justify the examination of any person on whom a warrant can be served. That a defendant in attachment is in fact generally absent and not capable of being served, will not permit the inference that he was designed to be excluded from the operation of the warrant if a proper service could be made.

Express authority to examine the defendant's wife was first conferred by the Attachment act of March 8th, 1798 (*R. L., p.* 355), the previous act of December 16th, 1748 (*Allison* 172), having given authority to examine any person whom the auditor should think fit. Neither parties to a suit nor their wives were then admissible witnesses. Parties were excluded on the ground of interest. *Best Evid.,* § 168. Their wives were excluded partly on the ground of interest, which was

considered identical with that of the husband, but mainly on a supposed public policy in the maintenance of marital confidence and peace. 1 *Greenl. Evid.*, § 334; *Best Evid.*, § 175. So great was the effect of public policy as a ground for the exclusion of a wife of a party to the suit, that it was often held that she was inadmissible even with the husband's consent. 1 *Greenl. Evid.*, § 340. No other reason than this supposed public policy can, I think, be discovered for the fact, that when we examine our legislation on the subject of evidence, we find that while a party to a suit was permitted to be called as a witness by the opposite party as early as 1849 (*Pamph. L., p.* 265), and to become a witness in his own behalf as early as 1859 (*Pamph. L., p.* 489), yet the last named act expressly enacted that no female should be admitted as a witness for or against her husband except when the proceeding was between her and her husband, and the wife of a party was not made admissible as a witness until 1870 (*Pamph. L., p.* 59), and then the evidence she could give was restricted. *Rev., p.* 378.

Considering the law of evidence as it then stood, I think that the Attachment act of 1798 expressly mentioned the wife of the defendant as one who could be examined as to his property, to avoid any inference, that the supposed public policy which would exclude her from being a witness in the case, would also exclude her from being thus examined. It also might perhaps be contended, under the broad terms of that act, that a defendant in attachment, who was excluded as a witness solely on the ground of his interest, could have been examined touching his property; but however that may be, that, since the act of 1849 permitted one party to call another party as a witness, he could be thus examined, has not been contested in this argument.

In this view, therefore, the provisions of section 46 are broad enough to cover the case of defendant, and would require him to submit himself to examination by the auditor, unless he had another and valid excuse for refusal.

It is next contended that the provisions of section 46 are not applicable after a defendant has entered appearance pursuant to the provisions of section 38.

By that section it is enacted, that any defendant in attachment may enter his appearance to the suit of the plaintiff or any applying creditor without giving bond, and, after such appearance and notice thereof, the suit of the plaintiff and of each applying creditor shall proceed in all respects as if it had been commenced by summons, and no other claim can be put in under the attachment after such appearance.

The thirty-ninth section enacts, that upon appearance of defendant under section 38, the lien of the attachment shall continue, and the movable property attached shall remain in the custody of the sheriff or his bailee, subject to the order and control of the court or a judge thereof, who may, if occasion require, order the property sold as perishable and appoint an auditor " with like powers in all respects as if no appearance had been entered."

The question is, whether, by this language, an auditor, after such an appearance, is clothed with the powers conferred by section 46.

The extent of the powers of an auditor under sections 38 and 39 was considered by the Court of Errors in *Blatchford* v. *Conover*, 13 *Stew. Eq.* 205. It was held that his power was not limited to the sale of property ordered to be sold as perishable, but extended to making sale of the attached property after judgment on the order of the court.

This interpretation does not settle the question before us. A power to sell attached property after judgment in such a case was, as was pointed out by the court, indispensable, for otherwise the lien of the attachment, which was expressly continued, became unavailable, the act providing no way of enforcing it except by sale by an auditor. Therefore the grant was properly held to confer such power of sale. But the purpose of sections 38 and 39 does not require the exercise of the power of inquiry under section 46, and whether the general language used in section 39 confers that power must

be determined by a consideration of those sections in connection with the act of which they form part.

Sections 38 and 39 came into the revised Attachment act from the supplement of March 1st, 1871. *Pamph. L., p.* 22.

The Attachment act had indicated that the attachment of property under it had two objects, viz., (1) if defendant did not appear, the devotion of such property to the satisfaction of the claims of the attaching and applying creditors; and (2) if defendant did appear, the substitution for such property of some equivalent. For the defendant could not appear except on giving bonds, either for double the value of the personal property attached, in which case the writ was set aside, saving the lien on real property (sections 32–36), or bonds covering the amounts sworn to by attaching and applying creditors, in which case the writ was also set aside and the lien on both real and personal property was discharged. *Section* 37.

After the appearance of defendant, in either of these modes, it seems plain that it was not intended to permit a resort to the inquisitorial powers conferred by section 46. Indeed, it seems impossible to argue that such powers continued after the writs had been set aside.

The supplement of 1871 is in harmony with the general design of the act above indicated. It provides for the appearance of a defendant. It does not require bonds in lieu of the attached property, but preserves that property for eventual devotion to the judgment which the plaintiff in attachment or the applying creditors may obtain. The writ is not set aside but its effect after appearance is expressly declared. The lien of the attachment, that is, the lien which had been acquired thereby, is to be continued. This express declaration, that the suit shall proceed as if commenced by summons, and that the lien acquired should be continued, leaves no room for inference that a lien could be afterward acquired on property discovered under the inquiry permitted by section 46. Thenceforth the suit proceeds *in personam,* remaining a proceeding *in rem.* as to such property as had been already affected by the lien of the attachment, and no other.

Therefore, the generality of the language of section 39 must be restricted. It is used in connection with the provision continuing the lien of the attachment, and it should be held applicable only to that subject. So construed the auditor will have all the powers necessary to care for and sell, when ordered, the property on which the lien has been continued, .and such powers are all that are essential to the purpose of these sections. A construction which would permit him to inquire for other property, on which no lien could be acquired, is inadmissible.

That the construction I have given these sections is correct, seems indicated by the clause which prohibits further claims being filed after appearance. Under this construction this clause is in harmony with the rest of the act; under the construction contended for the creditors who had already put in claims would occupy a better position than other creditors. Its correctness is also indicated in the provision for a discharge of the lien, on giving security, contained in section 39. The language evidently refers solely to property on which the writ had become a lien, and which lien had been continued. This shows that there was no intent to extend the lien or like provision for its discharge would have been made.

The result is, that the auditor had no power to require the defendant to submit to examination under section 46. Defendant's refusal to submit to such examination does not put him in contempt.

The motion must be denied, with costs.