EDMOND CONNELLY v. ALBRECHT J. LERCHE AND TERESSA O'ROURKE, DEVISEES OF FELIX E. O'ROURKE, DECEASED.

EDMOND CONNELLY v. ALBRECHT J. LERCHE, EXECUTOR OF FELIX E. O'ROURKE, DECEASED, AND TERESSA O'ROURKE.

PAULUS A. WENZEL v. ALBRECHT J. LERCHE AND TERESSA O'ROURKE, DEVISEES OF MARY M. O'ROURKE AND FELIX E. O'ROURKE, DECEASED.

1. A writ of attachment issued against an executor will be quashed in such a case as here presented as improperly issued against such executor.

2. Where lands were attached under a writ and a return made thereto, and an inventory and appraisement filed, a general appearance for the

defendants in attachment was entered in the clerk's book under section 38 of the Attachment act. *Held,* that, after such appearance, the suit proceeded *in personam,* remaining a proceeding *in rem* as to the property attached, and that a motion to quash the attachment and proceedings thereunder will be refused.

3. Where a writ of attachment is issued against devisees under section 8 of the Attachment act, it should be limited to the lands of the devisor, held by the devisees, and the return of the sheriff and the inventory should have like limitation; but where there is sufficient in the affidavit and testimony on the rule to show that the attachment and levy could be properly made, and that the lands taken were the lands of the devisor, held by the devisees, such amendment will be permitted to the writ and the return if the facts on such application warrant the same.

On rules to show cause why these attachments should not be set aside.

Argued at June Term, 1893, before Justices DEPUE, LIP-PINCOTT and ABBETT.

For the plaintiffs, *Babbitt & Lawrence* and *Gilbert Collins.*

For the defendants, *Chauncy H. Beasley.*

The opinion of the court was delivered by

ABBETT, J.    An application is made in these cases by the defendants, to quash the attachments therein, on the ground that they were illegally issued.    In No. 1, the case of Edmond Connelly *v.* Albrecht J. Lerche and Teressa O'Rourke, devisees of Felix E. O'Rourke, deceased, the affidavit for the writ states that Felix E. O'Rourke, deceased, in his lifetime, was indebted to the said Edmond Connelly in the sum of $15,000, as near as deponent can ascertain, and was a non-resident of this state, and that Albrecht J. Lerche, executor of the last will and testament of said Felix E. O'Rourke, and Teressa O'Rourke are devisees of said Felix E. O'Rourke, and are not, to deponent's knowledge or belief, residents in this state at the time of making the affidavit.    The attachment directed the sheriff of Monmouth county to attach the rights and credits,

moneys and effects, goods and chattels, lands and tenements, of Albrecht J. Lerche and Teressa O'Rourke, devisees of Felix E. O'Rourke, deceased, defendants, wheresoever in the said county the same might be found, so that the said defendant be and appear before the Supreme Court, &c., to answer unto Edmond Connelly in an action upon contract, &c.

In the view taken by the court in this case, it is not necessary to consider the objections made by defendants to the affidavit or writ. If these objections have any validity, they cannot be considered in this case, because, on September 21st, 1892, a general appearance was entered for the defendants by James S. Aitkin, attorney. No bond was given. This appearance was entered in pursuance of section 38 of the Attachment act, and the latter part of the section states that, after such appearance and notice, the suit or suits of such plaintiff or plaintiffs, creditor or creditors, shall proceed in all respects as if commenced by summons, and no other or further claim shall be put in under such attachment after the entry of such appearance. Section 39 provides that in case of an appearance by virtue of section 38, the lien of the attachment shall continue. *Rev., p.* 48.

The Supreme Court, in *Jackson* v. *Johnson,* 22 *Vroom* 457, 461, says that, after such appearance, " thenceforth the suit proceeds *in personam,* remaining a proceeding *in rem* as to such property as had been already affected by the lien of the attachment, and no other." The same court, in *Davis* v. *Megroz et al.,* 26 *Vroom* 427, says : " The attachment suit is transformed into a suit begun by summons by the defendants' appearance to the action. An appearance in manner and form such as would be regarded as an appearance to a suit instituted by summons served on one of the defendants, is all that is necessary to transform the attachment proceedings into a suit commenced by summons."

See, also, *Thompson* v. *Eastburn, Surviving Administrator of Taylor,* 1 *Harr.* 100.

The result of such appearance, under section 38, was to prevent any further claims being put in under such attach-

ment, and the action of the defendants in appearing, affecting, as it did, the rights of other creditors and preventing their filing claims, must bind plaintiff to the effect given by such statute to the appearance, which effect, under section 39, is that the lien of the attachment shall continue. Under the statute, the lands and tenements taken under the attachment, having been attached and taken before the entry of such appearance, the lien thereon will be continued by virtue of the statute, and the motion to quash must therefore be refused. The defendants invoked the statute, which enabled them to appear without giving bond. In doing so, they were bound by the terms of that statute, which, in such case, continued the lien of the attachment.

The second attachment was in the case of Edmond Connelly v. Albrecht J. Lerche, executor, &c., of Felix E. O'Rourke, and Teressa O'Rourke. In this case the affidavit for the writ states that Mary M. O'Rourke, now deceased, in her lifetime was indebted to the said Edmond Connelly in the sum of $16,000, as nearly as deponent can ascertain, on a judgment obtained in the Supreme Court of the State of New York in favor of said Edmond Connelly and Felix E. O'Rourke; that said Mary M. O'Rourke was a non-resident of this state; that Albrecht J. Lerche, executor of the last will and testament of Felix E. O'Rourke, and Teressa O'Rourke, are in possession of certain real estate in this state of Mary M. O'Rourke, claiming by devise from Felix E. O'Rourke, whose title, if any, was derived by devise from Mary M. O'Rourke; that said Felix E. O'Rourke was not a resident of this state, and said Albrecht and Teressa O'Rourke are not residents in this state at this time.

The writ of attachment was issued to the sheriff of Monmouth county, commanding him to attach the rights and credits, &c., of Albrecht J. Lerche, executor of Felix E. O'Rourke, deceased, and Teressa O'Rourke, defendant, wheresoever, &c., so that the said Albrecht J. Lerche, executor, &c., of Felix E. O'Rourke, deceased, and Teressa O'Rourke, be and appear before the Supreme Court, &c., to answer unto

Edmond Connelly on an action upon contract, &c. This writ was executed and returned with an inventory and appraisement stating that the rights and credits, lands, &c., of the defendant Albrecht J. Lerche, executor, &c., of Felix E. O'Rourke, deceased, and Teressa O'Rourke, made by virtue of the above-stated writ, had been attached, and mentioning the same two tracts of land at Navesink.

This writ should be quashed as issuing against an executor. It has been held that an attachment under our statute is a proceeding *in rem* and obviously inconsistent with the law of administration of estates as established in this state, and that therefore a court will quash a writ of attachment against an executor in such a case as here presented. *Haight* v. *Executors of Bergh*, 3 *Gr.* 183. See, also, *Muller* v. *Leeds*, 23 *Vroom* 366; *Peacocks* v. *Wildes*, 3 *Halst.* 179; *Haight* v. *Executors of Bergh et al.*, 2 *Gr. Ch.* 388.

In the third case, Paulus A. Wenzel *v.* Albrecht J. Lerche and Teressa O'Rourke, devisees of Mary M. O'Rourke and Felix E. O'Rourke, deceased, the affidavit for the writ says " that Mary M. O'Rourke and Felix E. O'Rourke (now deceased) in their lifetime were indebted to deponent in the sum of $4,300, as near as deponent can at this time ascertain ; that neither said Felix E. O'Rourke nor Mary M. O'Rourke were residents of the State of New Jersey ; that there is now due to deponent on said indebtedness about the sum of $5,300 ; that Albrecht J. Lerche and Teressa O'Rourke are now seized of certain lands and premises in this state, claiming the same by devise from said Mary M. O'Rourke and Felix E. O'Rourke, and that said Albrecht J. Lerche and Teressa O'Rourke do not reside in the State of New Jersey." Upon this affidavit an attachment was issued, directed to the sheriff of Monmouth county, as follows : " We command you to attach the rights and credits, moneys and effects, goods and chattels, lands and tenements, of Albrecht J. Lerche and Teressa O'Rourke, devisees of Mary M. O'Rourke and Felix E. O'Rourke, deceased, defendants, wheresoever in your county the same may be found, so that the said defendants be and

appear before the Supreme Court of the State of New Jersey, &c., to answer unto Paulus A. Wenzel in an action upon contract to his damage $10,600, and have you then and there this writ." An affidavit for $5,300 was filed September 28th, 1892, before issuing this writ. There was a deputization by the sheriff of Joseph Johnson endorsed on the writ and a return of due execution, referring to the inventory annexed, which is as follows: "Inventory and appraisement of the rights and credits, moneys and effects, goods and chattels, lands and tenements, of the defendants and all devisees, &c., of Felix E. O'Rourke, deceased, made by virtue of the above-stated writ on the 1st of October, 1892, by Rulif P. Smock, sheriff of Monmouth county, through Joseph Johnson, special deputy, and George H. Sickles, a discreet and impartial freeholder of said county." And then follows a description of two tracts of land at Navesink.

The rule in this case was to show cause " why the attachment issued in the above-stated cause and all proceedings thereunder taken should not be set aside and quashed on the ground that the said attachment was illegally issued." These questions arise upon these proceedings: *First.* Whether or not the writ and all proceedings thereunder should not be set aside as they stand, if they are not amendable. *Second.* What are the irregularities, if any, in the writ or proceedings; and, *Third.* Whether or not these irregularities, if any, are subject of amendment.

The evidence taken under the rule shows:

*First.* That Mary M. O'Rourke, formerly Mary M. Hartshorn, of the city of New York, devised and bequeathed to her husband, Felix E. O'Rourke, all her property and estate, both real and personal, of all kinds and nature, wherever the same may be situated, for his own use and benefit forever, and that she appointed him as the sole executor of said will. This will is dated January 29th, 1874, and was proved before the surrogate of the city and county of New York May 27th, 1892, and an exemplified copy filed and recorded in the office

of the surrogate of Monmouth county, New Jersey, June 24th, 1892.

*Second.* That Felix E. O'Rourke, husband of the late Mary M. O'Rourke, deceased, made his last will and testament, in which he says: "I give, grant, devise and bequeath all my estate both real and personal to my executor hereinafter named, in trust, however, to control and manage the same, as in his judgment shall be best, until such time, in his lifetime, as he shall deem best and proper for a sale thereof, and in the meantime to pay over to my sister, Teressa O'Rourke, the income thereof annually; and at the time when in his opinion my estate may in his judgment be sold and disposed of to the best advantage and during his lifetime, then to sell and dispose of the same in such manner and in such parts as he shall consider best, with full power to make and execute such deeds or conveyances as shall be required in law, and from the proceeds thereof to pay to my said sister, Teressa O'Rourke, three-quarters thereof; and the remaining one-quarter to retain and dispose of according to his own good will." This will was dated April 3d, 1891, and was proved before the surrogate of the city and county of New York May 27th, 1892, and letters testamentary issued thereon, and an exemplified copy thereof filed and recorded in the office of the surrogate of Monmouth county, June 24th, 1892.

*Third.* A deed from Benjamin M. Hartshorn to Mary M. O'Rourke, wife of Felix E. O'Rourke, dated and acknowledged November 24th, 1886, and recorded December 19th, 1886, in Monmouth county, the consideration whereof was one dollar and conveys the property attached.

*Fourth.* A judgment record of the Supreme Court, city and county of New York, wherein Edmond P. Connelly, plaintiff, against Mary M. O'Rourke and Felix E. O'Rourke, obtained and entered judgment March 14th, 1885, for $10,890.87 damages and $18.22 costs.

There is no direct testimony in the case of the death of either Mary M. O'Rourke or Felix E. O'Rourke; there is only a recital in the will of Felix of the death of his wife,

Mary. The affidavit, however, states that at the date thereof, September 24th, 1892, they were deceased, and that at that time they were indebted to Wenzel in the sum of $4,300, and that neither of them was a resident of the State of New Jersey, and further states that there was due at the date of the affidavit about the sum of $5,300. The affidavit also states that the defendants in attachment were seized of certain lands and premises, claiming the same by devise from Mary M. and Felix E. O'Rourke, and that the defendants in attachment do not reside in the State of New Jersey.

The proceeding is clearly brought under the eighth section of the Attachment act (*Rev., p.* 43, § 8), which provides "that the writ of attachment may be issued against the heir or devisee of any deceased debtor in all cases in which the writ might lawfully have been issued against such debtor in his lifetime; and all lands, tenements, hereditaments and real estate descended from or devised by such deceased debtor to the heir or devisee against whom the attachment is issued, may be attached and taken by virtue of the said writ."

The affidavit and the depositions clearly show a case where it was proper for a writ of attachment to issue under this section, under which could be attached and taken all the lands, tenements, hereditaments and real estate which the defendants in attachment held by devise from such deceased debtors. The affidavit states that the parties from whom the lands attached came by devise were indebted to Wenzel, and states the sum still due on said indebtedness. An attachment under said section could clearly issue against lands of Lerche and Teressa O'Rourke, which came to them by devise from the deceased debtors, Mary M. O'Rourke and Felix E. O'Rourke. There is, however, a defect in the writ and return thereto, because they do not clearly limit the sheriff to bringing in the defendants by attaching the property which the defendants in attachment received by way of devise from Mary M. O'Rourke and Felix E. O'Rourke. The use of the word "devisees" in the writ and in the inventory and appraisement appears to be merely a designation of indi-

viduals, and not a limitation of the attachment to the lands which they had received by devise from the deceased debtors, but there is enough in the affidavit and the testimony to amend this writ and the return without any injury to the parties if, in truth and in fact, the lands taken were the lands of the deceased debtors, which the defendants in attachment hold by devise from them.

Section 75 of the Attachment act provides " that this act shall be construed in all courts of judicature in the most liberal manner for the detection of fraud, the advancement of justice and the benefit of creditors." *Rev., p.* 55. This provision was clearly not intended to give the courts, under decisions in this state, any right to uphold an attachment where there was not in fact proper ground therefor, but it was evidently meant to apply in a case where it was clear upon the affidavit and the evidence that it was a proper case for an attachment under the act. It should be construed, then, in the most liberal manner for the benefit of creditors, and under the power of the court to amend it would be proper to put the case in such shape by amendment, if the facts justified it, as would enable the creditor to obtain the benefit of the attachment, when he brought himself within the terms of the act.

It has been suggested that the proper practice under section 8 might be to let the attachment go against the lands, &c., of the defendant, and leave it to the defendant, if other lands were attached than those that came to him by devise, to move to vacate the service of the attachment as to them. In my view this would not be the proper practice under this section, and I am clear that the writ should be so limited in form as to direct the sheriff to attach only property which came to the defendants by devise from the deceased debtors. The fair construction of this section, limiting the writ in this way, it seems to me is plain from the rules of the common law, and the history of legislation to remedy evils existing thereunder. Under the common law the devisee took the lands absolutely free from the debts of the devisor. He could not be called upon to yield up these lands for the payment of debts of the

devisor, nor could the debts of the devisor in any way be made out of these lands. An attempt was made to remedy this condition of things in England by the statute of William and Mary (chapter 14), but under the decision in *Wilson* v. *Knubley*, 7 *East* 128, the act was so limited in its effect that it did not reach a certain character of indebtedness of the devisor arising by covenant, &c. In the colony of New Jersey, in 1743 (*Allin. L., p.* 129), an act was passed which made real estate chattels to be seized, sold and disposed of for the satisfaction of debts. Before that it seems they could not be sold, but only extended upon an *elegit*. *Stone* v. *Todd*, 20 *Vroom* 274. On March 7th, 1797, "An act for the relief of creditors against heirs and devisees" was passed, authorizing creditors to maintain an action on simple and special contracts against heirs and devisees, and in case of alienation before action brought, charging heirs or devisees with the value of the land, and the act of 1743 having been repealed, the act of 1797 remained the only act by which land held by devisees could be reached, for the debt of the devisor, until the Revised Statutes of April 16th, 1846. See Nixon's edition of 1855, page 52, or edition of 1861, page 42, section 44, where the heirs and devisees were made liable, as they now are under section 8 of the present Attachment act. In 1853 (*Pamph. L., p.* 243) a supplement to the act of March 7th, 1797, was passed, providing for proceedings in case of non-resident heirs and devisees, and how judgment should be entered against non-residents.

Section 15 of an act respecting the Orphans' Court, and the power and authority of the surrogate (revision approved April 16th, 1846, *R. S., p.* 205, *Nix. Dig., ed.* 1861, *p.* 578), provided " that when any creditor shall have obtained judgment against an executor or administrator, and the execution issued on the same shall remain unsatisfied in whole or in part, for defect of personal estate to be levied on and sold, and there is real estate, it shall be lawful for the creditor or his legal representative, if the executor or administrator, being thereto required, shall neglect or refuse to obtain a sale thereof

according to law, for the space of six months after being so required, to apply to the Orphans' Court of the proper county to order such sale to be made; and the said court, upon due notice given to said executor or administrator of such application, shall examine the circumstances of the case; and if it appears that the said debt or any part thereof is unpaid, and the personal estate deficient as aforesaid, and no sufficient cause being shown to the contrary, the said court may make such order to show cause as is mentioned in the fifteenth section of the act entitled 'An act making lands liable to be sold for the payment of debts;' and such further proceedings shall be had as is prescribed in the same act in relation to the sale of real estate, where the personal estate is insufficient to pay debts."

The Orphans' Court act (revision approved March 27th, 1874, *Rev., p.* 766, § 70) still provides for the sale of land of any person who shall die seized thereof, for the payment of his debts, and the application therefor may be made either by the executor or administrator or by the creditor, under section 79, if he have judgment against the executor or administrator.

In order to bring suit against a devisee under the act of 1797, it is not necessary that the creditor should apply to the executor to pay the debt; nor need he, in his declaration in such suit, set up that there are not sufficient personal assets to pay the debt. He has a right to proceed to collect his debt by a suit, wherein he is limited, except in special cases stated therein, arising from faults of his own pleadings, to the lands which come from the devisor, or to the value of the same if they have been aliened before suit brought. He also has, undoubtedly, the right to issue his attachment, under section 8 of the Attachment act, against the devisee, but in using this proceeding its character and extent should be determined in view of all the other means at his command to obtain payment of his debt out of the lands of the devisee. Justice Depue, in delivering the opinion of the Court of Appeals, in *Schenck* v. *Griffin,* 9 *Vroom* 462, 465, says that " foreign attachment is a peculiar proceeding to compel the appear-

ance of a debtor by seizing his property, and, in default of appearance, appropriating it to the payment of the debt. It is strictly a proceeding *in rem*. With respect to the property, attached, whether it be real or personal, or a debt due the defendant from the garnishee, the judgment and proceedings are conclusive."

This suit is an application by a creditor for a writ of foreign attachment, under section 8 of the Attachment act, against the devisee for the debt of his devisor, and not for any debt of his own. The object of this section is undoubtedly to enable a creditor to appropriate lands of which the non-resident devisor died seized. But it certainly was not intended, either by its language or by any fair construction, according to the spirit of the Attachment act, to allow the writ to tie up or affect any lands of the defendant which he had not obtained by a devise from the deceased debtor. It is certainly clear that if the sheriff levied the attachment upon any other lands than those of the devisor, which had come to the devisee, the attachment as to them would be set aside. How, then, can any construction be contended for which would warrant the taking of lands which the defendant owned independently of the devise, when the court would set aside any such taking upon application? It would certainly be a strained construction of the act to say that true it is that if the sheriff takes any other lands than those received by the defendant from the devisor, that such taking would be set aside on application, and yet we will hold such taking good until such application is made by the defendant in attachment. No such construction is necessary for the protection of the rights of the creditors, and it is certainly one which would be of great injury to the defendant in attachment. The rights of the creditor are fully protected when the writ commands the sheriff to attach the lands of the deceased debtor, which the defendant holds under devise from the devisor. A writ in this form would give the creditor all that he is entitled to and would not injure the defendant in attachment. It seems to me, therefore, that the proper practice under this section is

to compel the plaintiff to limit his writ so that the attachment shall be only upon the lands devised to the defendant; then if the devisee does not choose to defend, the judgment will be *in rem* and will take the lands authorized to be taken under section 8, and will take nothing else. The defendant is not then called upon to make any motions or do anything whatever unless he desires to do so. He may permit the judgment to go by default and let the lands be sold for the devisor's debts. His own lands would then be unaffected by the proceedings, and he would not be called upon to take any step to protect them from proceedings which might cast an apparent cloud upon them or deprive him thereof.

While this is the proper construction of the act, yet the statute lays down a rule of construction in reference to it which requires courts to construe it liberally for the benefit of creditors. This statutory rule of construction does not warrant an attachment in any case except that provided for in the statute; nor does it authorize the levying of an attachment against any lands of the defendant for the debt of the deceased devisor unless they are lands which came from such devisor to such devisee. Where, however, there is sufficient before the court in the affidavit of the attaching creditor and in the testimony taken to enable the court to amend the proceedings so that they will conform to this view of the act, we think the court is called upon to make such amendment on application of the attaching creditor. In this case such an amendment of the writ of attachment as will limit it to lands received by the defendants from the devisors, and such amendment of the return of the sheriff as will limit the lands attached to the lands of the devisors held by the defendants, will be proper. The affidavit and testimony seem not only to warrant, but call for a writ in such form; and under such writ the sheriff would have limited his return to the lands thus devised to defendants. We would order the amendment without application, if there was affirmative proof in the case that the lands attached and returned in the inventory and appraisement were lands of the devisor liable to attachment

at the time of his decease; but as it does not appear with certainty that this is unquestionably so, we think the application should be made by the plaintiff to amend as suggested, and then the rights of the defendants in attachment, if any, can be fully protected.