LOUIS B. FOLEY, ADMINISTRATOR, &c., OF JAMES T. GIB-
BONS, DECEASED, PLAINTIFF IN ERROR, v. PETER
LOUGHRAN, DEFENDANT IN ERROR.

1.  The husband and wife, by the statutes of this state, are made competent and compellable witnesses for or against each other in any civil action, when either is a party thereto.
2.  The wife or husband of a plaintiff who sues or is sued in a representative capacity, is a competent and compellable witness in such action · to testify to the transactions with or statements by any testator or intestate represented therein.

3. The first section of the "Supplement to the act concerning evidence" (*Pamph. L.* 1880, p. 52; *Gen. Stat.*, p. 1407) qualifies any party to any action to be examined as a witness therein, notwithstanding such party may sue or be sued in a representative capacity; and the proviso to that section "that the supplement shall not extend so as to permit testimony to be given as to any transaction with or statement by any testator or intestate represented in said action," simply circumscribes the extent to which testimony may be given under that act, and is a limit only upon the operation of the act, and excludes only the party to the action from giving such evidence, and does not in any sense exclude or restrict the testimony of the wife or husband of such party as to such evidence.

4. A trial judge in a civil action has the undoubted right to make such comments upon the testimony as he thinks necessary or proper for the direction of the jury. He may intimate an opinion as to the weight of evidence or call the attention of the jury to any matter in the cause affecting the credibility of a witness, whenever he may think it required or necessary for the promotion of justice, so long as he fairly leaves the jury to determine the facts and draw their own conclusions.

On error to Hudson County Circuit Court.

For the plaintiff in error, *Allan L. McDermott.*

This action was brought to recover for boarding four grandchildren of the plaintiff. Their father, whose estate is attacked, died in 1893. Board is alleged to have been furnished three of the children from 1889 to 1892, and the other from 1890 to 1894. The plaintiff's claim rests on the testimony of his wife. This testimony was objected to and a bill of exceptions allowed. The testimony of the plaintiff's wife shows how preposterous his claim is. He was out of work; his wife was borrowing money from her son-in-law, yet, notwithstanding the impecunious condition of plaintiff, it is claimed no charge was presented for the board of the children and nothing paid on their account during the lifetime of intestate.

At common law the wife of a party could not testify for or against him. The reason of her exclusion was twofold. She could not testify against him because, to use the words of Greenleaf (1 *Greenl. Evid.*, § 334), it was considered "essen-

tial to the happiness of social life that the confidence subsisting between husband and wife should be sacredly protected and cherished in its most unlimited extent." Of course this ground of rejection could not be urged when she was offered as a witness by her husband. But the rule was also founded upon the identity of interest.

She could not testify where her husband was, by reason of interest, excluded. Where the husband or wife was not a party to the suit at common law, but yet had an interest directly involved in the suit and was therefore incompetent to testify, the other was also incompetent. 1 *Greenl. Evid.*, § 341.

Iu *Windham* v. *Chetwynd*, 1 *Burr.* 414, Lord Mansfield said (at *p.* 424): "In matter of evidence husband and wife *are one* and cannot be witnesses the one for the other. The husband cannot be a witness for his wife in a question touching her separate estate." His exclusion in this case was on the ground that he was, in legal view, identical with the party interested. When the act of 1859 was passed it read: "No person shall be disqualified as a witness * * * by reason of his or her interest; provided, nevertheless, that no female shall be admitted as a witness for or against her husband," &c. The proviso shows that she was considered a person disqualified by interest. The act did not remove the common law disqualification of a husband to testify for or against his wife. *Handlong* v. *Barnes*, 1 *Vroom* 69. It is in this case recognized that the qualification of a party as such to testify in his own behalf, did not remove the "oneness" pronounced by Lord Mansfield. By sections 4 (enacted in 1886) and 53 (enacted in 1880) of the Evidence act, parties suing or sued in a representative capacity may testify to matters other than transactions with or statements by any testator or intestate represented in said action. By section 4 of the act (enacted in 1870) the husband or wife of a party interested is made "competent and compellable to give evidence the same as other witnesses." So we have it:

(*a*) Parties could not testify at common law.

(*b*) Parties were disqualified by interest.

(*c*) The removal of the disqualification for interest did not qualify husband and wife to testify for or against each other.

(*d*) Husband and wife may testify for or against each other, the same as other witnesses.

(*e*) A party cannot testify to transactions with the deceased.

Now, as the common law disqualified the wife from testifying for her husband, not only on the ground of interest, but because they were one, it would seem to follow that where he cannot testify to a transaction because the other party thereto is dead, it is not within the reason of the statute that she should be allowed to testify to transactions between her husband and the deceased. The reason that closes his mouth should close hers.

The statute says they may testify the same as other witnesses, but this does not necessarily mean "as any other witness." The common law disqualified a party, and that disqualification attached to the wife because she was that party. Now, the law, as to certain testimony, disqualifies a party; and the wife should be disqualified as to similar testimony, because she and her husband are one. Otherwise, every kind of attacks upon estates will be encouraged. This witness could not be convicted of perjury. Her husband could not testify against her. In *McCartin* v. *McCartin*, 18 *Stew. Eq.* 272, Justice Magie illustrated the fact that it was not deemed impolitic to permit evidence to be given of transactions with the deceased, by a " wife, child, agent or attorney." But the question here presented was not involved in that case. My contention is that the wife is identical in law with the plaintiff—that she is a party to the suit. The reasoning of Vice Chancellor Van Fleet, in *McCartin* v. *Traphagen*, 16 *Stew. Eq.* 329, supports this insistment. "The identity of interest of husband and wife is such that, in the absence of a statute especially removing the disability, where one of them is rendered incompetent to testify by reason of the death of the opposing party, the other is also incompetent." 29 *Am. & Eng. Encycl. L.* 708.

The exceptions to the charge of the court do not need any argument to support them. The substance of the first exception to the charge is that it was not right to instruct the jury that they could take the evidence in the case as establishing a promise to pay. The second exception to the charge is the statement that if plaintiff's bill had not been paid, it should be. He had not testified that it had not been paid. The third exception is to the statement that plaintiff "had a perfect right" to collect that money. The fourth exception is that the court erred in fixing the value of the board furnished. It was not testified that any amount had been agreed upon, and it would have been just as well, if not better, to leave the assessment to the jury. Of course, under this charge, the jury were saved a great amount of labor, but the case was not clearly one for direction of a verdict for a specific amount.

For the defendant in error, *William D. Daly* and *Charles C. Black.*

This writ of error brings before the court alleged errors committed at the trial of the action which was brought by the plaintiff—the grandfather—for the board and expenses of a nurse for five small children—Leo, James, Peter, Richard and Mary Gibbons. The verdict was for $1,226.52; the reasonableness of the charges made is not disputed; the only points involved are exceptions to the admission of evidence and the charge of the trial judge.

The rule of law in New Jersey is as follows:

"In order to recover for the services, the plaintiff must affirmatively show either that an express contract for the remuneration existed or that the circumstances under which the services were rendered were such as exhibit a reasonable and proper expectation that there would be compensation." *Disbrow* v. *Durand,* 25 *Vroom* 343, 345.

It will hardly be contended, from a reading of the printed record, that it does not exhibit a reasonable and proper expectation that there would be compensation in this case. The defence is not to the merits of the case, but technical; the

defendant being sued in a representative capacity, the plaintiff is disqualified from testifying concerning any statement with the deceased, under the provisions of *Pamph. L.* 1880, *p.* 52; *Gen. Stat., p.* 1407:

"That in all civil actions in any court of law or equity of this state, any party thereto may be sworn and examined as a witness, notwithstanding any party thereto may sue or be sued in a representative capacity; provided, nevertheless, that this supplement shall not extend so as to permit testimony to be given as to any transaction with or statement by any testator or intestate represented in said action."

The exception to the admission of evidence is based on the admission by the court of the evidence of Mary Loughran, the wife of the plaintiff, testifying to a conversation about the charges to be made with the deceased, for the board of these children.

The above statute does not exclude any person except the party thereto; that its provisions will not be enlarged by judicial construction, as is evidenced from all the decided cases in which this statute 'has been involved from the McCartin case to the latest cases, viz., *New Jersey Trust, &c., Co.* v. *Camden, &c., Trust Co.,* 29 *Vroom* 196, 222; *S. C.,* 28 *Id.* 393; that the wife of the plaintiff is not a party thereto. She is competent to give evidence in a suit where her husband is a party. "The husband or wife of any person interested therein as a party or otherwise shall be competent and compellable to give evidence the same as other witnesses on behalf of any party to such suit, action or proceeding." *Pamph. L.* 1870, *p.* 59; *Gen. Stat., p.* 1398, § 5; *Jackson* v. *Johnson,* 22 *Vroom* 459.

While it is believed that the point above raised has not been expressly ruled upon by any reported case, it would seem that there is no merit in the contention.

Such is manifest from Mr. Justice Dixon's opinion in *McCartin Case,* 18 *Stew Eq.* 269, and by Chief Justice Magie's opinion in the same case (at *p.* 272), where he says: "It was evidently not deemed impolitic to permit such evidence to be

given by persons interested in the event of the suit but not parties, or by persons connected with any party as his wife, child, agent or attorney."

The only other exceptions are to the charge of the trial judge. It is respectfully submitted that the charge of the judge is in conformity with the case of *Disbrow* v. *Durand*, *supra.*

The evidence, as a matter of fact, shows not only (1) a reasonable and proper expectation that there would be compensation, (2) that there was an actual bargain and contract made by and between the deceased and plaintiff, and (3) that the charges were reasonable and fair, and that the verdict of the jury is strictly just and right and should not be set aside or disturbed.

For evidence of an agreement to pay by the intestate, see testimony of Jennie Jordan and Mary Loughran.

The second assignment of error, which is based upon the charge of the trial judge to the jury, is not the subject of an assignment of error; it is simply a comment upon the testimony. It has been held by the Court of Errors and Appeals that a judge has an undoubted right to make such comments upon the testimony as he thinks necessary or proper for the direction of the jury. He may intimate an opinion as to the weight of evidence or call the attention of the jury to any matter in the cause affecting the credibility of a witness. This is also a matter of judicial discretion and not subject to review in error. *Bruch* v. *Carter*, 3 *Vroom* 554 (1867). An expression of opinion upon the weight of evidence is not the subject of error. *Castner* v. *Sliker*, 4 *Id.* 96. It is the right and duty of a judge to comment upon the evidence. *S. C.*, *Id.* 508.

It is respectfully submitted that the judgment should be affirmed.

The opinion of the court was delivered by

LIPPINCOTT, J. This brings up for review a judgment of the Hudson County Circuit Court. It is alleged that certain

errors were committed in the trial of the action in the court below.

The action was by Peter Loughran against Louis B. Foley, administrator of James T. Gibbons, deceased, and was brought to recover an alleged debt due the plaintiff for the value of the board and nursing of the four children of Gibbons during his lifetime and after the decease of his wife. After the death of Mrs. Gibbons, the mother of the children, who were all of tender age, they were taken into the household of the plaintiff, who was their grandfather, some for longer and some for shorter times, covering a period of three or four years altogether, and were there boarded, nursed and taken care of. After the death of Gibbons, the plaintiff brought this action. The trial resulted in a verdict for the plaintiff, upon which judgment was entered in the Circuit Court.

The evidence shows that the engagements for the board, care and nursing of these children were made between the wife of the plaintiff, who was their grandmother, and the defendant. All of the arrangements appear to have been made between them. The wife of the plaintiff was not engaged in any business whatever, and was only acting in behalf of her husband as the head of the household.

There is no contention in the case that this action was not rightly brought in the name of the husband. The facts in proof in this case clearly demonstrate that the right of action, if any existed, was in the plaintiff as the head of his household. Some of the evidence tends to show that Gibbons, during his lifetime, made some payment on account of the board and care of the children.

Much evidence was admitted on the trial, without objection, to show the circumstances under which the children were taken into the household of the plaintiff, and the character of the services rendered to them.

The first assignment of error arises upon the admission by the learned trial judge of the evidence of Mrs. Loughran, the wife of the plaintiff. She was a witness produced by the plaintiff, and, against objection and exception, testified to cer-

tain conversations which she had with Gibbons, and certain transactions with him, in relation to the board and nursing of the children. The engagements were made by Gibbons with her, and it was as to these engagements with him that she was permitted to give evidence. Some of the conversations with Gibbons in relation to this matter were in the presence of her husband, others were with her alone.

I think that a reference to the statutes on the subject will clearly establish her competency to testify to these transactions.

The third section of the act entitled "An act concerning evidence" (Revision), approved March 27th, 1874 (*Gen. Stat., p.* 1377), provides "that no person shall be disqualified as a witness in any suit or proceeding at law or in equity by reason of his or her interest in the event of the same as a party or otherwise, but such interest may be shown for the purpose of affecting his or her credit; provided, nevertheless, that no party shall be sworn in any case when the opposite party is prohibited by any legal disability from being sworn as a witness, or either of the parties in a cause sue or are sued in a representative capacity, except as hereinafter provided."

The fourth section of the same act provides "that a party to a suit in a representative capacity may be admitted as a witness therein, and if called as a witness in his own behalf and admitted, the opposite party may in like manner be admitted as a witness."

The fifth section provides "that in any trial or inquiry in any suit, action or proceeding in any court, or before any person having by law or consent of parties authority to examine witnesses or hear evidence, the husband or wife of any person interested therein as a party or otherwise, shall be competent and compellable to give evidence the same as other witnesses, on behalf of any party to such suit, action or proceeding." The proviso to this section only excepts from this statutory rule of evidence the husband or wife, in any criminal action or proceeding, or in actions for divorce on account of adultery, except to prove the fact of marriage, or in any action for criminal conversation, or to disclose confidential

communications made by one to the other during the marriage. In such excepted cases the husband and wife are not competent or compellable to give evidence for or against each other.

By section 1 of a supplement to this act, approved February 25th, 1880 (*Gen. Stat.*, *p.* 1407), it is provided "that in all civil actions in any court of law or equity of this state, any party thereto may be sworn and examined as a witness, notwithstanding any party thereto may sue or be sued in a representative capacity; provided, nevertheless, that this supplement shall not extend so as to permit testimony to be given as to any transaction with, or statement by, any testator or intestate represented in said action."

At common law neither the husband nor wife was admissible as a witness in a civil or criminal action when the other was a party, and this principle applied to all actions at law in a representative capacity or otherwise. The husband and wife were said to be identical in interest. *Windham* v. *Chetwynd*, 1 *Burr.* 414; 1 *Greenl. Evid.*, § 334. The main ground of exclusion appeared to be that of public policy in the maintenance of marital confidence and peace. *Best Evid.* (*6th London ed.*), § 176. Mr. Justice Magie, in *Jackson* v. *Johnson*, 22 *Vroom* 457, 459, in view of the statutes of this state, indicated that no other reason than this supposed public policy existed for the exclusion of the wife.

It is perhaps needless to inquire the reason for the exclusion of the evidence of the husband and wife, where either was a party to the action. With the statutory restrictions, the parties to the action are both competent and compellable as witnesses. By a supplement to the act entitled "An act to regulate the practice of the courts of law," approved March 1st, 1849 (*Pamph. L.*, *p.* 264), a plaintiff or a defendant to an action was a compellable witness when called by the adverse party. By a supplement to the act entitled "An act concerning witnesses," approved March 18th, 1859 (*Pamph. L.*, *p.* 490), the disqualification was removed, and parties to the action were entitled to testify as witnesses. By this latter

act the wife of a party to the action was expressly excluded except when the suit or proceeding was between her and her husband, and the parties were also excluded when the opposite parties were prohibited by any legal disability from being sworn as witnesses, or either of the parties sued or were sued in a representative capacity. *Handlong* v. *Barnes*, 1 *Vroom* 69. This exclusion of the wife remained until the passage of the further supplement to the "Act concerning witnesses," approved March 17th, 1870 (*Pamph. L., p.* 59), in which the disqualification of the husband and wife, when either was a party to the action, was removed and they were by such statute made competent and compellable witnesses for or against each other the same as other witnesses, except in criminal actions or in proceedings for divorce on account of adultery, or in any case of bigamy except to prove the fact of marriage, or in any action or proceeding for or on account of criminal conversation, or as to any confidential communication made by one to the other during marriage; save in the excepted cases under this statute the wife became a competent witness in actions at law in which her husband was a party. *Jackson* v. *Johnson, supra.*

The Revision of 1874 is substantially the act of 1870, its verbiage being only slightly changed, and except as to the restrictions therein contained, in clear and express terms, places the husband and wife, so far as actions in which either are parties or interested, on the same plane as other witnesses. The language of the act is general, and the proviso containing the restrictions cannot be made to disqualify any farther than its provisions go. The disqualification by reason of the identity of interest is expressly and entirely removed, and no construction leading to a different result can be permitted against the plain intent of the statute. The qualification of the husband or wife is nowise restricted by the existence of a legal disability of the adverse party when the other is either plaintiff or defendant or otherwise interested. They are made to stand apart as other witnesses. The party, being either husband or wife, under the third section of the act,

remains under the disability as a witness when the opposite party is prohibited as a witness by reason of legal disability, or when either sues or is sued in a representative capacity, yet the other stands, so far as being a witness in that section, in the category of other witnesses.

The restriction in the act of 1880 (*Pamph. L., p.* 52 ; *Gen. Stat., p.* 1407) can only apply to the party to the action. This statute only deals with the party to the action in whatever character he or she may sue or be sued, and by it the party, whilst competent as a witness, as he was under the act of 1870 as revised, is restricted from giving evidence as to transactions with, or statements by, any testator or intestate represented in the action. The exclusion of this character of evidence, by the terms of the act, can only apply to the party to the action, and this also clearly appears when the other statutes on this subject are taken into consideration. The separation of the husband and wife as witnesses for or against each other has been dealt with by other statutes and legislatively determined upon, and the public policy changed to meet new conditions. The disability of the wife or husband to be a witness in an action where the other is a party has been specifically removed by the statute except in those cases mentioned in the restrictive proviso, and as to all other cases she is a competent and compellable witness. The only exclusion of the statute of 1880 is the party to the action, and the proviso cannot be enlarged by judicial construction to embrace the disqualification of competent witnesses by other legislative enactments. The restrictive provision, by all rules of construction, must be confined to the party to the action and to his incompetency, which is the only subject-matter dealt with by the proviso.

In *McCartin* v. *McCartin,* 18 *Stew. Eq.* 265, 267, in this court, it was held that "the language of the proviso that this supplement shall not extend so as to permit testimony to be given as to any transaction with or statement by any testator or intestate represented in said action " is a limitation only upon the operation of the act of 1880. It simply circumscribes

the extent to which the testimony may be given under that act. *New Jersey Trust Company* v. *Camden Safe Deposit Company*, 29 *Vroom* 196; *Woolverton* v. *Van Syckel, Executor*, &c., 28 *Id.* 393.

The conclusion reached is that the wife of the plaintiff was a competent and compellable witness in this action, to the transactions with and statements made by the intestate.

The other assignments of error can be considered together. Their substance is that the court, by its instructions to the jury, took away from its consideration the question whether there existed an express contract between the plaintiff and the intestate for compensation for the board and nursing of the children, and also the question whether the circumstances under which the services were rendered were such as exhibited a reasonable and proper expectation that there would be compensation, and also the question whether the remuneration had been paid by the estate, and also the question of the reasonable value or price of the services rendered. The contention of the defendant was that, under the instructions, the trial judge determined these questions of fact in favor of the plaintiff.

It is unnecessary to discuss the charge of the trial court in detail. An examination of the instructions shows that, with certain comments upon the evidence and its weight, the court distinctly submitted to the jury to determine from the evidence whether an express or implied contract for compensation or remuneration for the board and care of the children existed between the plaintiff and the intestate. *Disbrow* v. *Durand, Administrator*, &c., 25 *Vroom* 343, and cases cited. The jury was instructed that if no express contract existed, the mere fact that the services were rendered by the plaintiff to the children, they all being members of the same household, would give rise to no implication to pay for such services, and that in order to sustain a recovery the jury must find that the evidence and the circumstances must be such as to exhibit to the jury a reasonable expectation on the one side to pay and on the other side to

receive compensation for the services rendered.  It was submitted to the jury whether, upon any ground, there should be a recovery, and, if a recovery, for what amount, including a submission to the jury to determine, if a debt was established, the question whether any part of it had been paid.

We do not find that the comments upon the evidence of the trial court either misled or influenced the jury as to the matters of fact submitted to their determination.

The rule is that a trial judge has the undoubted right to make such comments upon the testimony as he thinks necessary or proper for the direction of the jury.  He may intimate an opinion as to the weight of evidence, or call the attention of the jury to any matter in the cause affecting the credibility of a witness, whenever he may think it is required or necessary for the promotion of justice, so long as he leaves the jury to determine the facts and draw their own conclusions.  This rule was not in any respect violated by the trial judge.  *Bruch* v. *Carter,* 3 *Vroom* 554, 565; *Castner* v. *Sliker,* 4 *Id.* 507, 512.

The judgment must be affirmed, with costs.

GARRISON, J. (dissenting).  The court charged the jury as follows:

"Gentlemen of the jury—This case was brought by the plaintiff, Peter Loughran, against Louis B. Foley, administrator of the estate of James T. Gibbons, deceased.  It is brought to recover the sum of $1,830.19 for the board, care and maintenance of the children of James T. Gibbons—for James H. Gibbons, from September 1st, 1889, to April 21st, 1892, at $12 per month; Peter Gibbons, from September 1st, 1889, to April 21st, 1892, at the rate of $12 per month; Richard Gibbons, from November 12th, 1889, to April, 1892, at the rate of $12 per month; Mary Elizabeth Gibbons, from July 8th, 1890, to March 1st, 1894, at the rate of $12 per month, and for the board of three nurses from November 27th, 1889, to February 21st, 1892, at $16 per month, amounting to $1,830.19.  The plaintiff has brought this action for the

board and maintenance of these children, against the administrator of their father's estate, which board and maintenance they claim has never been paid.

"Counsel for the defendant raises a point of law which I will decide now. Ordinarily, where services are rendered and voluntarily accepted, the law will imply a promise upon the part of the recipient to pay for them; but where the services are rendered by members of a family, living as one household, to each other, there will be no such implication from the mere rendition and acceptance of the services. In order to recover for the services, the plaintiff must affirmatively show either that an express contract for the remuneration existed, or that the circumstances under which the services were rendered were such as exhibit a reasonable and proper expectation that there would be compensation.

"In this case the testimony shows that there was at the time these children were taken to this place such expectation upon both sides. The wife of the plaintiff, who was the grandmother of the children and mother-in-law of the deceased person for whom Mr. Foley is administrator, states that she had conversation in which Mr. Gibbons told her to take care of these children, with instruction to render her bill for what she thought was right. He left it to her. If this is true, whether any price was agreed upon or not, there were expectations by both parties, and the testimony is that the services were expected to be remunerated for, and I charge you that, under the evidence in this case, these services were expected to be remunerated for—that is, that the plaintiff expected to receive compensation, and that the defendant expected to pay. The case is a peculiar one in a great many of its aspects, and as such it requires your very careful consideration. This suit is not brought against Mr. Foley in his individual capacity; it makes no difference to him personally which way you decide this case. He is brought here as the defendant as administrator of James T. Gibbons' estate, an estate which belongs to these children, and as such administrator of the estate, as guardian of these children, it is his duty to protect that fund

for these children, and defend it against any cause which he believes to be an unjust one and not right, and that is the position which he and the children are in.

"Now, you have the evidence here of Mrs. Loughran, the wife of the plaintiff, that she made this agreement and that she took charge of these children; that the husband, the plaintiff here, was the head of that household; that he provided for the family, and that he also, of course, provided for the children. As the head of that family he is the real plaintiff in this suit. You will scan the testimony very carefully in this case, because it looks to me like a case that should be carefully scrutinized. The fund belongs to these children, and this suit is brought for the maintenance of these children. The plaintiff is a poor man; the deceased was a man of means and could have paid on demand. If that bill has been paid, these children should not be obliged to pay it again; and on the other hand, if it has not been paid it is no more than right that it should be paid. You will take and consider all the evidence—all the facts and circumstances which may surround it—and if you find that the plaintiff in this case has rendered services and is entitled to this claim, your verdict, of course, will be for the sum sued for, less the credits allowed. As to whether the plaintiff has received anything or not himself upon this bill there is no direct evidence; you only have the testimony of the plaintiff's wife, Mrs. Loughran. The plaintiff's wife is put upon the stand and she claims that amount. Upon cross-examination she states that these children, except one, left there in 1892 in order to make room for other members of her family, and that after that time she borrowed money from this son-in-law. You will consider whether that is a reasonable state of affairs, and that she paid a part of it back. She borrowed $400. She says it was a loan—those are the words she used, I believe—and that there were other sums of money which she received from him. You will remember the testimony on that point, and that counsel for the defendant and plaintiff made the sum $614.17. This was after the children had left the house of their grandmother.

You will take the testimony and find whether Mr. Loughran ever collected that money. He had a perfect right to do it. He was the head of that family, and as such he had the right to demand of his son-in-law the amount of the board and maintenance of the children. Whether he did or did not is a question for you, and the only way in which you can arrive at a conclusion is to take the facts and circumstances surrounding the case and say whether or not the bill is reasonable and proper; that it is a just bill, running from September, 1889, to April, 1892, which is still unsettled, and whether it is a just bill against the deceased. That he owed this money for the board and maintenance of the children is a question for you.

" The plaintiff has not gone upon the stand, and there is no evidence, except that given by the wife, that the amount which she states was all that she had received.

" Mr. Foley, as I have stated before, is sued here in a representative capacity; defends it as the guardian of these children—as the administrator of their father's estate. It is proper that he should defend this suit, as he has an estate, according to his testimony, that was left to these children of over some $28,000.

" Take the facts as they have been presented here, and if you find that the $614.17 was paid on account of these children, you will deduct that from the full amount claimed, which would then leave a balance of $1,226.52 for the plaintiff, with interest. If you find that has been paid, your verdict will be for the amount claimed, less that amount; or if you find that the services rendered in boarding and taking care of these children have been remunerated for, your verdict will be for the defendant."

The theory of this charge is that if the deceased told Mrs. Loughran to take care of the children and to render a bill for what she thought right, this criterion, viz., what Mrs. Loughran thought right, was the measure of damages in a suit brought by Mr. Loughran against administrators for the grandchildren's board. What Mrs. Loughran testified was

as follows : "He [intestate] said, when I am ready to send him my bill, and at any price, he said, I will pay any bill you charge what is right." This was the only proof as to measure of damages, and acting upon the sum fixed by this witness as "what she charged," the court arrived at the amount of the verdict to be rendered if any contract was made and nothing had been paid on account.

In the face of a bill of exceptions specifying this part of the charge and error assigned thereon, I cannot ignore the principle of evidence involved.

Assuming that the case was, in all other respects, legally presented or withheld from the jury, the question remains whether there was any proof upon which the court could direct the jury that a certain sum was due, if anything was due. There was none unless the testimony I have cited furnished such proof, which will not be seriously contended. In such a case the court is no more authorized to act upon such testimony than a jury would be, and the only redress of the party is by exception to the charge, since he cannot foresee that such will be the judicial action.

It can scarcely be contended that the value of board and care rendered by a grandfather to a family of fatherless grandchildren is a matter of such common knowledge that no testimony need be offered; but if that be true, it is to the common knowledge of the jury that the matter submits itself. In fine, I see no way in which the present mode of procedure can be affirmed without the inordinate relaxation of the rule of damages, and that in a class of cases in which looseness is not to be encouraged.

*For affirmance*—THE CHIEF JUSTICE, COLLINS, DEPUE, DIXON, GUMMERE, LIPPINCOTT, LUDLOW, VAN SYCKEL, ADAMS, BOGERT, HENDRICKSON, NIXON.   12.

*For reversal*—GARRISON.   1.